Good morning everyone. Welcome to the Ninth Circuit. We're delighted to be here with you today. Judge Miller and I would like to extend a special thanks to Judge Benitez, who is sitting with us by designation today from the Southern District of California. We are very grateful for his willingness to come and help us out by taking on this additional work, so thank you. Thank you for inviting me. Okay, we will hear the cases in the order that they appear on the calendar, which is Vargas v. Howell, and if counsel for that case are ready to go, we'll hear from you. Good morning, your honors, and may it please the court. My name is Kendalee Works, and I represent Appellant Daniel Vargas, plaintiff in the underlying action. At this time, I would like to reserve two minutes for rebuttal. Thank you. Mr. Vargas is appealing the district court's arbitrary decision to award a mere fraction of the attorney's fees reasonably incurred and requested by Mr. Vargas as the prevailing party on all claims. Mr. Vargas requested just over $254,000 in attorney's fees reasonably incurred over the course of two and a half years of litigation, and the court awarded just 71.78 hours for a total of $26,131 in fees. That represents 10% of the total, a 90% reduction, a total of 71.78 hours for two and a half years of civil rights 1983 litigation. It's about 26% of the total recovery, though, isn't it? If you take $99,999 and you divide $26,000, which is what he awarded, it goes out to about 26%, right? It does, Your Honor. However, it is a 90% reduction in the overall amount requested, and that's not coincidental because the district court repeatedly said throughout its order that Mr. Vargas had recovered just 10% of the total fees initially, or the total damages initially claimed, and the district court erred for three primary . . . You said it was arbitrary, but didn't the judge do a really thorough analysis of how he got to the Lodestar and how he came up with the number that he came up with? Respectfully, Your Honor, I would disagree that the analysis is thorough. I would point the court to this circuit's decision in the Chaudhry v. City of Los Angeles case, a panel decision which Judge Watford actually took part in, and this court there reversed and remanded an award of attorneys fees where the district judge had implied an across-the-board reduction of 88%, just 2% less than the reduction here, and according to Moreno, the court in Chaudhry noted, quote, by and large the district court should defer to the winning lawyer's professional judgment as to how much time he was required to spend on the case. And in Chaudhry, directed to your question, Your Honor, especially relevant, the court found that while a district court can reduce a lawyer's request for duplicative or unnecessary work, where the disparity between the amount requested and the amount actually awarded is larger, a more specific articulation is required. And the district court's here, the order is much like the order in Chaudhry, where the district court explained generally, and that is indeed what it did here, that the fee request the district court believed included multiple duplicative efforts, excessive overstaffing, and unnecessary hours, much like the generalizations that we see in the district court's order here. Particularly problematic and what I think emphasizes greatly the district court's arbitrary decision to reduce fees by 90% here, the court could look at the time spent in depositions alone. The district court awarded to Mr. Terry, the lead counsel on the case, just 33.48 hours, despite that Mr. Terry spent 48 hours and 26 minutes in deposition time alone, deposing necessary fact witnesses and the parties to the case. So a total of 33.48 hours for the entire two and a half year litigation, not even accounting for the additional 15 hours essentially that were spent in deposition time alone. That doesn't afford Mr. Terry the benefit of any time spent preparing for depositions, analyzing the claims as a result of the evidence discovered during those depositions, and determining what motion practice and the settlement value of the case. Counsel, as you said a moment ago, I mean the core of the district court's reasoning seems to have been that you got 10% of what you were asking for so it was appropriate to give you only 10% of the fees. And why isn't that just what we said in McCown that a court should do, that the fees have to be adjusted downward when you've achieved unlimited success and that's what happened here? Because, Your Honor, I agreed that McCown indicates that one of the primary considerations is the proportionality of the damages actually awarded and obtained versus those requested. But the court in McCown was clear, as in Morales and Rivera, the U.S. Supreme Court decision that it cites to, that that's not the only consideration. And that leads me to my next point of error, which is the district court here erroneously concluded, clearly error, that Mr. Vargas did not obtain a monetary, a non-monetary success or benefit. As a blanket proposition, it concluded that he obtained no non-monetary success or benefit. But if you look at what happens here, there's a nearly six-figure settlement. It's one cent less than the cap on damages in Nevada for a county entity. And the agreement indicated, both sides agreed, that Mr. Vargas had prevailed on all of his claims. Clearly, other minors similarly situated to Mr. Vargas and Mr. Vargas had their rights vindicated when NYTS, the Nevada Youth Training Center, NYTC, I apologize, changed its written policy. There's no doubt, there's no dispute here, that NYTC and the Department of Family Services in Nevada implemented a written policy in order to preclude hobbling, which was the unlawful conduct, the uses of excessive force, that it happened here. It changed its policy in order to preclude that. That change in policy is a benefit to all minors similarly situated to Mr. Vargas and society as a whole. The goal of, the underpinning of our juvenile justice system, your honors, is to rehabilitate and train minors such as Mr. Vargas. Clearly, a policy that precludes unlawful conduct and corporal punishment such as this is a benefit to minors like Mr. Vargas and society as a whole. And that was a clear error on the court's part to not even consider that that was in some way a non-monetary benefit or success. It's a vindication of Mr. Vargas' rights and the rights of children similarly situated to him. The third manner in which the district court erred was its finding that Ms. Armini and Ms. McCarty, plaintiffs' prior attorneys, Mr. Vargas' prior attorneys, did not have standing to seek attorney's fees for work that was actually unnecessarily performed. Finally, in closing, the court should reverse in part the district court's finding awarding attorney's fees and remand with instructions that the district court must award fees with consideration for the non-monetary benefit and success achieved and further instruct the court that it not apply a blanket 90% across-the-board reduction in attorney's fees merely based on the ratio of the damages awarded versus the damages incurred. And I would also indicate to the court that the district court's finding that the $99,000, the $99,999, was the total compensation is in clear error because the parties contemplated that Mr. Vargas would seek his attorney's fees and costs. Thus, the parties contemplated that the financial benefit to Mr. Vargas would be more than the $99,999. I thought it said that you were the prevailing party and could seek costs but the defendant retained the right to oppose any award, right? That's correct, Your Honor. However, neither party contemplated that there would be an award of zero, clearly, in this case given that Mr. Vargas prevailed on all claims. And in fact, this is distinct in McCown where I believe the plaintiff prevailed only on one of the nine claims. Here, you have the opposing party submitting that plaintiff has prevailed on all claims in the amended complaint. And so he's clearly the prevailing party. There's a significant level of success. Defendant concedes that the result here was not nominal. It was not de minimis. And so the parties contemplated both sides and plaintiff entered into the settlement with the understanding that he would be able to seek fees and costs with the expectation that $99,000 would not be the outer bounds of the monetary compensation. So to conclude that that was just the 10% is what he expected and what he received is clear error by the court. Again, the court doesn't account for the non-monetary success or benefit that Mr. Vargas achieved and it also made an erroneous finding with respect to standing. A contrary finding here undermines the purpose of 1988 which is to encourage lawyers to take on civil rights actions such as these in order to vindicate important rights of Mr. Vargas and children in our system similarly situated. Can I ask you one question? I'll make sure you have your two minutes for rebuttal. You mentioned that the settlement amount was one cent below some cap. That was new to me. So just why was, why $100,000 is the most you can get against? That's the cap absent punitive damages against a county entity in the state of Nevada. Okay, so why were you asking for, was the million, million plus that you were asking for, did that include punitive damage? I thought that was just compensatory. The million plus was, that's what the experts based their opinion for the compensatory damages on. However, recognizing that the cap was $99,000, or was $100,000 factored into the $99,000 settlement. The... What I'm asking is, is $100,000 the most you were going to be able to recover from these defendants regardless? Absent of finding a punitive damages, yes, Your Honor. However, with that said, the calculation of damages presented to the court is still going to be the full extent of his damages because although that may be the cap, he certainly has a claim far in excess of that amount of money. Yeah, no, I guess it seems to me that fact, I'll ask your opponent, that fact seems to cut in your favor because if you, yes, you were asking for the world, but in reality the most you were going to recover, it sounds like, was $100,000. You got almost all of that. Agreed, Your Honor, with the exception, of course, of punitive damages which we would have vigorously pursued. But yes, this clearly was not a nominal settlement. It was not beyond the outer bounds. It wasn't de minimis, and the defendants concede as much in, in their own briefs. Okay, let's hear from your opponent and we'll give you two minutes for rebuttal. Thank you, Your Honors. Okay. All right, let's hear from counsel for the defendants. Good morning. May it please the court, Teresa Haar on behalf of defendant appellees in this matter, and we respectfully request that you affirm the district court's decision to reduce the fee award here. The two primary reasons why a court should consider a higher than proportional fee award... Start with the question that I just posed to your opponent and tell me if you agree with what she said or not. I do not. Firstly, there was not a county entity here. It was, they're all state entities, and the tort cap, the state does have a $100,000 limit on torts per client or per claimant per claim. However, 1983 actions are not limited to the tort cap. The $100,000 that was at issue here was the State Board of Examiners has to give prior approval to any settlement in excess of $100,000. I just had a settlement two weeks ago for $25 million. So it is possible to have it. You simply need approval. It's an easier process to have it for less than $100,000. There was no limitation on $100,000. 1983 actions are not subject to the tort cap, and so there's no upper bounds on that. So when they went in asking for well over $1 million in damages, there's a possibility a jury could, in some constitutional cases under 1983, award that $1 million in damages, and the state would be obligated to pay it. So there was no $100,000 limit. They did not achieve the maximum allowable limit under state law. They received less than 10% of what they were demanding. I guess I have a question about that, given that this was a settlement. I mean, suppose they had come in and said, we are asking for $100,000. I guess I don't want to ask you to reveal confidential communications with your client, so I will just assert that it seems to be unlikely that you would have settled that claim for $100,000. So why should they be punished for making a sort of aggressive estimate of what their damages were that then induced you to settle for $100,000? So I'm not going to make the argument that the $99,999 was a nominal value, but if we look at, they're making the claim that it was an exceptional result, but they asked for more than $1 million in damages. Plaintiff had disclosed he had already incurred more than $100,000 in past medical expenses. So to settle a case for less than the actually incurred prior medical expenses, that's why we would argue this is not in fact an exceptional result that would give them the higher than proportional fee award. The only other reason a court should consider a higher than proportional fee award is with a public benefit. Preliminarily, this claim of public benefit was raised for the first time in the reply brief on appeal. But if we look at what the public benefit they're claiming is, plaintiff is claiming that officers at NYTC are no longer allowed to use hobbling as an allowable restraint technique for youthful offenders. Change that was made to NYTC's policy is much more broad than that and is demonstrably the result of not this case. Mr. Vargas filed his complaint in August of 2014. Prior to that, in June of 2014, Judge Voy, who is a family court judge in Las Vegas, received a complaint from one of his youthful offenders of disparate treatment at NYTC. Judge Voy ordered all youthful offenders that were Clark County commits to be removed from NYTC. A week later, he removed all the Clark County commits from the Caliena Youth Center. He ordered a full top-to-bottom reevaluation of every policy program and procedure for all three facilities in the state of Nevada, including Red Rock Academy. A year later, after the 2015 legislative session, a task force was the result of that was AB 472, which was presented to the 2017 legislature. It was approved by the legislature. It became law. The biggest result of the AB 472 was the creation of the Juvenile Justice Oversight Commission. And so it wasn't just what kind of restraints are allowed at NYTC. They evaluated restraints of youthful offenders in the courtroom, during transport, at the facilities. They looked at interaction of youth parole with reducing recidivism and overseeing rehabilitation programs. They looked at compliance with county health codes to make sure the kitchens were engaging in safe food handling and preparation. They ensured that the facilities were all PREA compliant with the Prison Rape Elimination Act. And so change was made. There was a comprehensive overhaul to Nevada's entire juvenile justice system. It began before this case and it took place over the course of three years with the legislature. It had nothing to do with this case. Mr. Vargas and his complaint never asked for injunctive relief, only made monetary damages. The settlement agreement itself was only for monetary damages. There was no admission or finding of liability. And so you can't make the argument now that there was this great public benefit that you achieved, when really it is demonstrably the result, primarily of Judge Voy's initiative. He's been absolutely instrumental in juvenile justice reform in the state of Nevada. He's been on the bench over 20 years. And so you can't make the argument that you achieved a public benefit that would entitle you to higher attorney's fees, when the public benefit was already in motion and directly demonstrably the result of another case. But Counselor, even if we agree with you that there's no public benefit and that all that's at issue is the monetary recovery, we have a lot of cases that say that you can't just have a mechanical application of a ratio of the recovery to the amount sought or to the fees. And so even if that's a factor that the court could have taken into account, it seems like here the court just looked at the ratio and then stopped. Didn't it have an obligation to provide some further explanation? And I believe that the district court did. Firstly, the litigation strategy that was undertaken was to do quite a few, almost a dozen depositions were taken, and there were non-testifying experts that were retained and those were a lot of the costs that went into this as well. However, a lot of the claims that were in the complaint were demonstrably false and they were nobly false at the outset. And we learned all of that during Mr. Vargas' deposition himself. So he claimed that he had been sexually assaulted numerous times through cavity searches while at NYTC. In his deposition, he later came back and said, yeah, he had one cavity search when he first got there, but it wasn't by any of the defendants. He claims that his injuries here were sustained because he had been brutally assaulted by 15 officers. It turns out two officers came to his room at the incident in question. He was being combative and argumentative, and when he charged at one of the officers, they called for backup and three others showed up. He was not assaulted by 15 armed officers. He claims that he was denied the ability to enlist in the military and that negatively impacted his future monetary earnings. However, he later in his deposition clarified he had an appointment with a Marine recruiter that he chose to not go to, and it wasn't because of his vision problems that he was denied the ability. He chose to not attend this meeting. He also claimed that he was denied medical treatment, but in his deposition he later clarified, I never told anyone my neck was hurting. Even when he was transported to UMC Hospital only a couple days later, he said he didn't even have any neck pain, and that's why he didn't tell anyone he was having pain. So they undertook a litigation strategy that was very costly, but there were a lot of issues that they could have simply averted and gotten around and not taken such an expensive litigation strategy had they done their due diligence at the outset and pursued a different case. Can I ask you a question? So I'm reading from McCown and there's there's language in it that says the following. It says, once a district court completes its analysis of the final lodestar amount, it must explain how it arrived at its determination with sufficient specificity to permit an appellate court to determine whether the district court abused its discretion. In your opinion, did the district court in fact do that analysis and specify how it arrived at its amount? Yes, I believe Judge Mahan did. In his 11-page order, he went through attorney by attorney and really looked at what all of the reasonableness of the hours incurred. And reasonableness really is the amount that a private client would pay. And here, a private client would not pay more than three hundred thousand dollars in fees and costs for a ninety nine thousand dollar award. And if we look at what Judge Mahan actually went through, first he started with attorney Terry's hours and . . . Well, can I just jump in? Because I understood the judge's rationale with respect to Terry, and that's the big chunk that gets cut out, was simply to say, well, if you were the senior lawyer on the case and a bunch of the stuff you billed for more junior people could have and perhaps should have done, and on that basis I'm just not going to award you a penny for any of the work. Not like I'm going to reduce the . . . because you already cut the hourly rate. But that just struck me as not logically correct. Even if it was the case that maybe a more junior lawyer could have done the work, that wouldn't mean you'd get zero dollars. You would just get it compensated at a lower rate, right? And Attorney Terry wasn't given zero hours. He was given thirty to forty hours ultimately. Out of three hundred and thirty four. So I'm saying for the three hundred hours or whatever it got just cut, he got zero dollars for any of that work. And there was work performed. The judge's complaint was simply that, but you, the most senior lawyer on the case, did not have to be the one doing it. And if we look at the reasonableness, would a private client pay five hundred and fifty dollars an hour for a senior attorney to spend more than a hundred hours reviewing prior discovery? That was one of the big chunks that Judge Mahan removed, was more than a hundred hours of reviewing prior discovery. There was also a couple of very specific issues that he noted, namely there were hours spent for drafting a motion for reconsideration. Not only was there a motion for reconsideration that was never . . . Attorney Terry, that was for that other lawyer, and that perhaps was justly cut out, right? But I'm talking about the lead lawyer who did the lion's share of the work, hopefully on a more efficient basis than maybe a more junior lawyer would have done. But yet the judge's rationale for just cutting out the vast majority of the fees claimed was simply that you weren't the right person to do it. I grant you with . . . maybe there was some excess there, some fat that across the board reduction. That just strikes me as excessive here. Well, that's where we get to the proportionality and the reasonableness. For the hours to have already been billed for the prior attorney on the case, then we get to Mr. Terry and he spends a hundred hours reviewing prior discovery. The client is not only paying for the discovery to be done the first time, but then paying again another hundred hours for a new attorney to get up to speed. While an attorney should be able to bill for getting up to speed because that is time they actually spent, you look at the reasonableness of what a for a senior attorney when he did have a junior associate, he did have a paralegal who did do some of the work. Very little. Very little. That was Judge Mahan's primary concern was that he had other less senior attorneys who billed at lower rates. He also had paralegals that billed at lower rates who were involved in the case and he chose to spend his $550 an hour doing things that he did not need to do at that time. Again, it goes back to what would a private client pay? For a private client to pay $550 an hour for a hundred hours of reviewing prior discovery, Judge Mahan felt was excessive. He considered the curve factors and he considered Lodestar and he made the determination that it would be reasonable to reduce those hours. Okay. Do my colleagues have any further questions? All right. Thank you very much. You're over your time. I'm not cutting you short. It starts to count up. Thank you. We simply request that you would affirm Judge Mahan's decision in reducing the fees. Thank you. Thank you very much for your argument. Let's put two minutes on the clock for Reveto. Thank you, Your Honors. First, the private client analysis fails to take into account the purpose of 1988. In fact, even in McGinnis, a case which I believe the district court cited in its own analysis, the court noted that the private attorney general theory allows the fee award to exceed what a reasonable individual would pay lawyers for the benefit conferred upon him in a private case because the attorneys in a civil rights case also confer benefits on society by winning a civil rights claim and vindicating important civil rights. The arbitrariness of the district court's decision to cut Mr. Terry's hours in the manner it did by just a blanket 90 percent application because, as Your Honor aptly pointed out, Mr. Terry, as the lead attorney on the case, opted to do the lion's share of the work himself. In fact, the district court actually contradicts itself when it makes its award of costs. It awards all costs for all depositions. And it states, quote, defendant's motion does not explain and the court cannot discern a manner in which to determine whether any of these deposition costs were incurred unreasonably. So the court, oh, yes, Your Honor. I'm sorry. I don't mean to cut you off, but can you tell me, in your own words or in your estimation, what is it that Judge Mann should have done that he did not do and what the results should have been that he should have arrived at? Certainly, Your Honor. Even if you look to the defendant's opposition, the defendant's opposition actually goes through, and granted it's an analysis that certainly plaintiff and Mr. Vargas would disagree with, but it does go through an issue by issue application of what fees it believes were in error. Now, again, it adopts a 90 percent, the defendant adopted a 90 percent blanket reduction, which isn't even supported by their expert affidavit from Mr. Lenhardt, but nevertheless, the district court could have easily gone through the analysis that even the defendants did. It didn't adopt the defendant's analysis, and again, we would disagree with the accuracy of that analysis, but it didn't adopt that sort of topic by topic analysis. Rather, it just said Mr. Terry's fees were unreasonable, and in fact, it says Mr. Terry's billing entries demonstrate that he billed an unreasonable amount of time on a case that settled for a small fraction of plaintiffs' requested damages award, and that's really the crux of the district court's award and the crux of their, of its error, because it continues over and over throughout its order, which when you read in totality, you can only infer that the 90 percent reduction is derived from what the district court believed to be Mr. Vargas' only recovery of 10 percent of his actual claim damages, which again, we would assert is an error, given that $99,999 was not the max that the parties contemplated he would receive, even under the agreement, because he was allowed to seek attorney's fees as the prevailing party on all claims. But again, this private theory, it does not account, the private attorney theory, which even the district court cites in its own order, simply ignores the McGinnis factors, and it ignores a progeny of decisions from this circuit and from U.S. Supreme Court, wherein the court has said a plaintiff in a civil rights action is not entitled to receive a blanket proportion of the damages actually awarded, because in many cases the damages are going to be nominal or lower than a private client might expect to achieve, for a whole plethora of reasons. And that is the purpose why we have 1988, so that... Thank you counsel, you've exceeded your time. Thank you, Your Honor. The case just argued is submitted...
judges: Watford, Miller, Benitez